EXHIBIT 2

Received 08/19/2004 10:55 in 08:38 on line [9] for CB03736 Printed 08/19/2004 11:06 * Pg 1/17

FAX    FROM:713-250-5441 USDC-SDTX    TO: 9-713-651-5246    PAGE: 1 OF 17    CONTROL: #040781-CV

## UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

**MICHAEL N. MILBY**
CLERK OF COURT
P.O BOX 61010
HOUSTON, TEXAS 77208

www.txs.uscourts.gov

08/19/04

To:   C Mark Baker (aty)

Re:   Notice of Entry of Order or Judgment

---

Enclosed Order or Judgment entered in:

case number:   4:04-cv-01250

instrument number:   27

If after three attempts this fax fails, then we will print this notice and mail it to you. For questions, please call (713) 250-5768.

Number of pages including cover sheet:   17

Received 08/19/2004 10:55 in 08:38 on line [9] for CB03736 Printed 08/19/2004 11:06 * Pg 2/17

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

AUG 1 8 2004

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| CRYSTAL POWER COMPANY, | § | |
| Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. H-04-1250 |
| COASTAL SALVADORAN POWER LTD., COASTAL NEJAPA, LTD., EL PASO CGP COMPANY, successor in interest to Coastal States Corporation and the Coastal Corporation, and EL PASO CORPORATION, successor in interest to Coastal States Gas Corporation and the Coastal Corporation, | § § § § § § § § § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

Pending is Defendants' Motion to Compel Arbitration (Document No. 3), Plaintiff's Motion for Remand (Document No. 9), and Defendants' Motion to Stay Pending Fifth Circuit Appeal and Related Arbitration (Document No. 18). Having considered the motions, responses and additional briefing, the history of Civil Action No. H-03-3634, and the applicable law, the Court Orders, for the reasons set forth below, that Plaintiff's Motion for Remand (Document No. 9) is GRANTED and this case is REMANDED to the 23rd District Court of Brazoria County, Texas.

27

## I. Procedural History

On October 15, 2002, Plaintiff Crystal Power Company ("Crystal") filed suit against Coastal Salvadoran Power, Ltd. and Coastal Nejapa, Ltd. in the 23rd District Court of Brazoria County, Texas, Cause No. 21815*BH02. In its Original Petition, Crystal alleged that it was an investor in a Salvadoran power plant, that Crystal had not "received proper and timely payments consistent with its financial interests in the venture" and that Defendants had diverted "a substantial prepayment of amounts ultimately due to the venture in excess of $100,000,000.00." Plaintiff's Original Petition, attached as Exhibit "3B" to Defendants' Notice of Removal (Document No. 1), at 3. Crystal alleged claims for breach of contract, conversion, breach of fiduciary duty, breach of the duty of good faith and fair dealing, misrepresentation, and fraud, and alternative theories of recovery based on "the doctrines of promissory estoppel and/or *quantum meruit*." Id. Crystal amended its petition on November 6, 2002, generally alleging the same facts but adding El Paso CGP Company (as successor in interest to Coastal States Gas Corporation and the Coastal Corporation), and El Paso Corporation (as successor in interest to Coastal States Gas Corporation and the Coastal Corporation) as Defendants. Plaintiff's First Amended Petition, attached as Exhibit "3B" to Defendants' Notice of Removal (Document No. 1). After filing a Second Amended Petition in April, 2003, which also generally

2

Received 08/19/2004 10:55 in 08:38 on line [9] for CB03736 Printed 08/19/2004 11:06 * Pg 4/17

alleged the same facts and claims against the four Defendants, Crystal filed a Third Amended Petition on June 6, 2003. The Third Amended Petition alleged the following, particularized facts in support of Crystal's claims against Defendants:[1]

> In 1994, the Republic of El Salvador began to privatize power generation in the country. [Crystal] used its well-established reputation and credibility with the El Salvadoran government-run electric company, Comision Ejecutiva Hidroelectrica Del Rio Lempa ("CEL"), to convince the government to allow some of the Defendants to build a power plant in El Salvador and sell power. [Crystal] entered into a joint venture with Defendant, Coastal Salvadoran Power, Ltd., a company owned and controlled by the other Defendants, El Paso CGP and El Paso Corporation (collectively, "El Paso"), to form Coastal Nejapa, Ltd. Defendant, Coastal Nejapa, Ltd., was to receive all the net earnings from the power project, with a minority percentage being paid to [Crystal] and the majority percentage going to Defendant, Coastal Salvadoran Power, Ltd., each in their respective ownership percentages. In 2008, [Crystal's] percentage in the venture was to more than double to approximately 29%, entitling [Crystal] to receive a greater share of the power project's profits. Through the direct efforts of [Crystal], the power project and CEL entered into a Power Purchase Agreement ("PPA"), dated May 18, 1994, that extends through the year 2015.
>
> Defendants, El Paso, also has ownership and control of several entities from which the power project receives its working capital, oil and gas to run the plant, and management and technology personnel to head the day-to-day operations of the plant. All of these El Paso-owned entities receive their monies first from the power project before any monies were paid to Defendant, Coastal Nejapa, Ltd., whereupon other El Paso Defendants receive their majority share and [Crystal] a minority share of

---

[1] Defendants, as used herein, refers to the same four Defendants named in the state court action: Coastal Salvadoran Power, Ltd., Coastal Nejapa, Ltd., El Paso CGP Company, and El Paso Corporation.

3

the available funds. In essence, Defendants, El Paso, double dip into the power projects' earnings while [Crystal] receives a reduced share of the profits rightfully owed to [Crystal].

In these Enron-like transactions, Defendants El Paso have stripped away the future income of the power project to meet their own current cash needs without regard to the best interest of the power project or its El Salvadoran partner. These Enron-like transactions effectively cashed-in and virtually eliminated the most valuable assets from the power project, specifically, the guarantee of future income and an assurance of solvency. Through this shell game, El Paso favored its own subsidiaries over the interest of [Crystal] without regard to the validity of its actions under applicable law.

As a result of [Crystal's] ownership interest, it was entitled to certain payments relative to the operation of this project. Some or all of the Defendants exercise control over the income and/or cash flow of the project and have a responsibility to ensure that [Crystal] receives the proper and timely payment of amounts consistent with its financial interest in the project.

In 1999, CEL triggered a one-time provision in the PPA which allowed a possible prepayment of amounts due in the future at a substantial discount. Defendants were in sole control of the negotiations and subsequent arbitration of this termination indemnity proceeding. The power project and CEL entered into a lengthy arbitration to which [Crystal] was never a party nor approved. In spite of the present value of the PPA being worth hundreds of millions of dollars, some of the Defendants agreed to a significantly reduced price in order to get immediate cash out of the PPA and forego higher future earnings where [Crystal] would have owned a substantially greater share. When the agreement was reached between Defendants and CEL, the amount paid under the arbitration award ($90,000,000 USD) should have been paid to Coastal Nejapa, Ltd., from which [Crystal] would have received its share. Instead, at Defendant El Paso's instruction, all proceeds were paid to another wholly owned subsidiary of El Paso, and then the funds were distributed upstream to other El Paso entities. Neither the project nor [Crystal] received one dollar of this payment.

4

Received 08/19/2004 10:55 in 08:38 on line [9] for CB03736 Printed 08/19/2004 11:06 * Pg 6/17

> Defendants have refused to honor certain agreements between the parties, including, but not limited to, the Shareholders Agreement of Coastal Nejapa, Ltd., as amended, and the Subscription Agreement, as amended. [Crystal] has not received proper and timely payments consistent with its financial interests in the venture. Instead, Defendants involved in the arbitration directed that the substantial prepayment of the power purchase agreement be paid directly to one of Defendants, El Paso's, entities (a non-party to the PPA between the power project and CEL), thereby never triggering the financial responsibilities and funding obligations to [Crystal].
>
> Significantly, this substantial payment to Defendants would be taxable under El Salvadoran laws if the payment would have been distributed properly to the power project as owed. However, since Defendants diverted the funds to its other entities, the Defendants have never paid local income taxes on this substantial multi-million dollar payment. Defendant[']s deliberate tax aversion scheme not only cheated [Crystal] but the El Salvador government. Furthermore, based on information and belief, Defendants El Paso, which are corporations registered in Delaware and qualified to do business in Texas, have engaged in possible tax fraud as it has also never paid taxes to the United States government for the income earned from [the] substantial prepayment of the PPA.

Plaintiff's Third Amended Petition, attached as Exhibit "3B" to Defendants' Notice of Removal (Document No. 1), at 2-5.

Defendants then removed the case to this Court pursuant to 9 U.S.C. § 205. Crystal timely moved to remand the case, Civil Action No. H-03-3634, which motion was granted by Order entered November 13, 2003. In the Memorandum and Order granting Crystal's Motion to Remand, the Court concluded that "the subject matter of removed state court proceeding does not 'relate to' an arbitral

5

Received 08/19/2004 10:55 in 08:38 on line [9] for CB03736 Printed 08/19/2004 11:06 * Pg 7/17

award within the meaning of 9 U.S.C. § 205." See Document No. 17 in Civil Action No. H-03-3634 at 8.[2]

Thereafter, Crystal filed a Fourth Amended Petition in state court. That Fourth Amended Petition deleted the particularized facts set forth in the Third Amended Petition, and reverted to the more general allegations of the Second Amended Complaint that "[Crystal] has not received proper and timely payments consistent with its financial interests in the venture." Plaintiff's Fourth Amended Petition, attached as Exhibit "3B" to Defendants' Notice of Removal (Document No. 1), at 3. No mention was made in the Fourth Amended Petition of an arbitration proceeding or monies received as part of an arbitral award.

On February 10, 2004, Defendants again removed the case to this Court pursuant to 9 U.S.C. § 205.[3] In the Notice of Removal, Defendants alleged that "the subject matter of the state court action relates to an international arbitration agreement or, alternatively, an international arbitration award." Notice of Removal (Document No. 1) at 1. Defendants additionally alleged:

---

[2] Defendants filed a Motion to Reconsider the Order granting Plaintiff's Motion for Remand. The Court initially (and erroneously) granted that motion, but later corrected its action by vacating and setting aside the Order granting reconsideration. Hence, that vacated Order is a nullity in Civil Action No. 03-3634 and has no effect or bearing upon the present case.

[3] As was the case with the first removal, this case was removed to the United States District Court for Southern District of Texas, Galveston Division, and was thereafter transferred to the Houston Division, and assigned to the undersigned judge.

6

. . . . The Fourth Amended Petition deleted the language in Crystal's Third Amended Petition specifying that a significant, if not complete, portion of its requested relief was its alleged entitlement to a portion of an international arbitration award. *Id.* Crystal also deleted reference to possible violations of tax laws. *Id.*

3. Despite its attempts to plead around the issues, the fact remains that an international arbitration award and an international arbitration agreement are at the heart of Crystal's Fourth Amended Petition. Specifically, Crystal claims that as owner of a percentage of the Salvadoran power plant, it was entitled to a commensurate percentage of the plant's net earnings. *See* Fourth Amended Petition at ¶ 5-7. This includes a claim to a percentage of the amounts awarded in the international arbitration proceeding between Nejapa and CEL (the award referred to herein as the "Final Award"). *Id. See* Final Award attached as Exhibit 2.

4. Crystal's claims are within the scope of the contracts containing international arbitration agreements which must be enforced. Crystal seeks to share in the proceeds from and benefits of a Final Award in arbitration. The Final Award resolved a dispute over a contract containing an agreement to arbitrate all disputes arising thereunder. Moreover, a contract entered into pursuant to the order of the Arbitral Tribunal in the Final Award, and of which Crystal seeks the benefits, requires arbitration of any and all disputes arising thereunder or in connection therewith.

Notice of Removal (Document No. 1) at 3-4 (footnotes omitted). Crystal has filed a Motion for Remand (Document No. 9). Defendants have filed a Motion to Compel Arbitration (Document No. 3).

## II. Discussion

As a threshold matter, the Court must determine whether it has jurisdiction over this case. Steel Co. v. Citizens for a Better

7

Received 08/19/2004 10:55 in 08:38 on line [9] for CB03736 Printed 08/19/2004 11:06 * Pg 9/17

.

Environment, 118 S. Ct. 1003, 1012-1013 (1998). In this regard, Crystal first argues that the Court's jurisdiction over this case is foreclosed by the prior removal and remand of Civil Action No. H-03-3634. Additionally and alternatively, Crystal argues that the subject matter of this case does not "relate to" an arbitration agreement or an arbitration award within the meaning of 9 U.S.C. § 205. Finally, Crystal argues that Defendants waived their right to remove this case by virtue of the forum selection clause contained in the parties' shareholders agreement.

Title 9 U.S.C. § 205, the jurisdictional basis for removal at issue in both the first and second removals, provides as follows:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. . . .

The subject matter of an action pending in State court relates to an arbitration agreement or award within the meaning of § 205 whenever an arbitration agreement or an arbitration award "could *conceivably* affect the outcome of the plaintiff's case." Beiser v. Weyler, 284 F.3d 665, 669 (5th Cir. 2002) (emphasis in original). This is a very low bar, whereby jurisdiction under § 205 will exist

8

Received 08/19/2004 10:55 in 08:38 on line [9] for CB03736 Printed 08/19/2004 11:06 * Pg 10/17

"over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense." Id.

A.   Effect of Prior Removal and Remand

In S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 492 (5th Cir. 1996), the Fifth Circuit set forth the general rules governing the successive removal of a case that has previously been remanded:

> As a general rule, once a case is remanded to state court, a defendant is precluded only from seeking a removal *on the same ground*. The prohibition against removal "on the same ground" does not concern the theory on which federal jurisdiction exists (i.e., federal question or diversity jurisdiction), but rather the pleading or event that made the case removable.

(emphasis in original) (citations and footnotes omitted). Key to the inquiry is whether the second removal is based on the same *factual* ground for removal alleged in the first removal. Where a second removal asserts the same factual basis for removal as the first removal, the Court's prior order of remand, to the extent it "expressly addresses the theory of federal jurisdiction" has res judicata effect on the subsequent removal. Id. at 493. In contrast, where a second removal asserts a new factual basis for removal, "the new factual basis is not deemed adjudicated with the remand order and, therefore, is not barred by res judicata." Id.

9

Received 08/19/2004 10:55 in 08:38 on line [9] for CB03736 Printed 08/19/2004 11:06 * Pg 11/17

Crystal argues that Defendants' second removal, whether it is construed as being premised on the more particularized allegations in the Third Amended Petition, or the more generalized allegations in the Fourth Amended Petition, is precluded by virtue of the Order of Remand in Civil Action No. H-03-3634. According to Crystal, because the Court has already determined that the subject matter of the state court action, as alleged in the Third Amended Petition, was not related to an arbitration award, and because Defendants could have asserted in their first notice of removal that the state court action related to an arbitration agreement, but did not, Defendants' second removal should be determined to be invalid.

In their first removal, Defendants alleged only that the state court action related to an arbitration award subject to removal under 9 U.S.C. § 205. In their second removal, Defendants now allege that the state court action relates to both an arbitration award and an arbitration agreement. Whether the state court action relates to an arbitration award has already been decided. See Memorandum and Order (Document No. 17) in Civil Action No. H-03-3634.[4] Under S.W.S. Erectors, that determination has res judicata

---

[4]The determination that the state court action was not related to an arbitration award was based on the following:

> . . . . Here, the arbitration, arbitral award, and payment of the award are all history. Plaintiff's allegation is that the $90 million cash award should have been paid to Defendant Coastal Nejapa, Ltd., from which Plaintiff would have received its share, but instead, Defendant El Paso Corporation caused the proceeds to be

10

Received 08/19/2004 10:55 in 08:38 on line [9] for CB03736 Printed 08/19/2004  11:06 * Pg 12/17

effect and precludes Defendants' second removal of this action on the basis that the state court action relates to an arbitration award. S.W.S. Erectors, 72 F.3d at 493.

The alternate basis for removal, namely, that the state court action relates to an arbitration agreement, could have been asserted by Defendants in the first removal. The Fifth Circuit, however, has not specifically determined that a second removal is precluded if the factual basis supporting the second removal could have been, but was not, asserted in the first removal. S.W.S. Erectors may suggest that result, but does not so hold. Moreover, no appellate authority has been found that supports such an extension of S.W.S. Erectors. But see Grover v. Comdial Corp., 275 F. Supp. 2d 750, 754 (W.D. Va. 2003) ("If nothing of

---

> directed to another entity and thereby deprived Plaintiff of its share. Evidence of the arbitral award and its prior payment may therefore be admissible in the dispute that has now arisen between the parties to this case, which all had interests in NPC [Nejapa Power Company], but that evidence in the context of the dispute here does not implicate the Convention, or the Convention Act. In other words, the connection of the NPC/CEL arbitral award to this case is "too tenuous, remote, or peripheral" to find that this case "relates to" an award under § 205.

Memorandum and Order (Document No. 17) in Civil Action No. H-03-3634, at 7-8. Defendants appealed the Memorandum and Order to the Fifth Circuit, which dismissed the appeal on June 1, 2004 without comment. The dismissal of Defendants' appeal is in accord with the recent decision of Dahiya v. Talmidge Int'l, Ltd., 371 F.3d 207 (5th Cir. 2004), reh'g and reh'g en banc denied, ___ F.3d ___, 2004 WL 1663849 (5th Cir. July 27, 2004) (No. 02-31068), in which the Fifth Circuit determined that a district court's order remanding a case for lack of jurisdiction under 9 U.S.C. § 205 was not reviewable on appeal.

11

Received 08/19/2004 10:55 in 08:38 on line [9] for CB03736 Printed 08/19/2004 11:06 * Pg 13/17

significance changes between the defendant's first and second attempts to remove the case, the prior remand order is the law of the case."). Accordingly, Defendants' first removal, and the remand order in Civil Action No. H-03-3634, does not preclude Defendants' second removal, which includes different factual assertions--that is, that the state court action is related to an arbitration agreement.

B. "Related to" an Arbitration Agreement

Generally, courts should be able to "assess their jurisdiction from the pleadings alone." Beiser, 284 F.3d at 671. Under § 205, however, jurisdiction can also be determined from the notice of removal. According to the court in Beiser:

> The language of § 205 strongly suggests that Congress intended that district courts continue to be able to assess their jurisdiction from the pleadings alone. Section 205 provides in part: "The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint *but may be shown in the petition for removal.*" 9 U.S.C. § 205 (emphasis added). This language does create one difference between the federal question jurisdiction conferred by § 205 and most other forms of federal question jurisdiction: it permits removal on the basis of a federal defense. The language that the ground for removal "need not appear on the face of the complaint" explicitly abrogates the well-pleaded complaint rule that normally keeps such defenses from serving as the basis for federal question jurisdiction. But at the same time the statute permits a defense based on an arbitration clause to serve as a grounds for removal, it also directs us to treat such defenses the same way that we treat offensive claims. That is, just as we determine whether a plaintiff's claim

12

Received 08/19/2004 10:55 in 08:38 on line [9] for CB03736 Printed 08/19/2004 11:06 * Pg 14/17

> arises under federal law from the complaint alone, the statute directs us to determine whether a defendant's defense arises under federal law from the "petition for removal" alone.

Beiser, 284 F.3d at 671. Therefore, "absent the rare frivolous petition for removal, as long as the defendant claims in its petition [for removal] that an arbitration clause provides a defense, the district court will have jurisdiction to decide the merits of that claim." Id. at 671-72. Such a procedure "allows the district court to determine its jurisdiction from the petition for removal, without taking evidence and without a merits-like inquiry." Id. at 672.

Here, in their Notice of Removal, Defendants identify three agreements that contain arbitration provisions: (1) a 1994 Power Purchase Agreement ("PPA") between CEL and Nejapa Power Company, L.L.C. ("NPC"); (2) a March 2002 "Final Award," which reflected CEL's and NPC's agreed resolution of their dispute regarding the PPA; and (3) a Transmission Costs Agreement ("TCA"), entered into by CEL and NPC as part of the Final Arbitration Award. Defendants do not assert in their Notice of Removal that the arbitration provisions in any of those three agreements provide a defense to Crystal's claims. Instead, they assert that it is "'conceivable' that the arbitration agreement referenced in the Final Award and contained in the TCA could affect the outcome of this case." Notice of Removal (Document No. 1) at 8.

13

Received 08/19/2004 10:55 in 08:38 on line [9] for CB03736 Printed 08/19/2004 11:06 * Pg 15/17

The party removing a case to federal court has the burden of proving federal jurisdiction, <u>Allen v. R & H Oil & Gas Co.</u>, 63 F.3d 1326, 1335 (5th Cir. 1995); <u>Jernigan v. Ashland Oil Co.</u>, 989 F.2d 812, 815 (5th Cir.), cert. denied, 114 S. Ct. 192 (1993), with any uncertainty or ambiguities being resolved in favor of remand. <u>Manguno v. Prudential Property and Cas. Ins. Co.</u>, 276 F.3d 720, 723 (5th Cir. 2002). Here, Defendants have not met their burden of establishing jurisdiction, even under the "low bar" permitted for removal of a case under § 205.

Defendants do not allege in the Notice of Removal that any of the three arbitration agreements they have identified provides them with a "defense" to Crystal's claims. Moreover, Defendants' Notice of Removal discloses that the three agreements to arbitrate were entered into by CEL and NPC, neither of which is a party to this case. See Notice of Removal (Document No. 1) at 2-4; see also PPA, Final Award, and TCA, attached as Exhibits 1, 2, and 3 respectively, to Defendants' Notice of Removal (Document No. 1). The Notice of Removal likewise discloses that none of the parties to this case was a signatory of the agreements containing the arbitration provisions. See Exhibits 1, 2, and 3 to Defendants' Notice of Removal. Therefore, since Defendants are not signatories to the arbitration agreements, they cannot facially or credibly claim that the arbitration agreements provide them with a defense to Crystal's claims. See <u>Westmoreland v. Sadoux</u>, 299 F.3d 462,

14

Received 08/19/2004 10:55 in 08:38 on line [9] for CB03736 Printed 08/19/2004 11:06 * Pg 16/17

465, 467 (5th Cir. 2002). Indeed, Defendants have made no such claim. Given that Defendants' Notice of Removal itself does not contain an allegation that "an arbitration clause falling under the Convention provides a defense" to Crystal's claim against them, Beiser, 284 F.3d at 669, and because the arbitration agreements (incorporated into the Notice of Removal) do not, on their face, provide any defense to Crystal's claims, Defendants' Notice of Removal on its face is inadequate to support jurisdiction under § 205.

Likewise, Crystal's state court pleadings contain no allegations to support jurisdiction under § 205. "[W]henever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit." Beiser, 284 F.3d at 670. Here, Crystal's claims are not dependent upon any issues that are subject to the agreements containing the arbitration provisions. Crystal's state court action, even when formerly pled in the Third Amended Petition with more particularized facts and a reference to the arbitration award, is simply based on allegations that Crystal has not received from Defendants—not from any party to the concluded arbitration—the payments to which it is entitled under the parties' shareholders' agreement. The parties' shareholders' agreement does not contain an arbitration clause, and is separate and distinct from the PPA, the Final Award, and the TCA.

15

Received 08/19/2004 10:55 in 08:38 on line [9] for CB03736 Printed 08/19/2004 11:06 * Pg 17/17

It is therefore not "conceivable" that any arbitration clause contained in the PPA, the Final Award, or the TCA, could affect the outcome of Crystal's state court action on a completely different contract.

Because neither the allegations in Defendants' Notice of Removal nor the allegations in Crystal's state court pleadings support jurisdiction under § 205, Plaintiff's Motion for Remand must be granted.

### III. Conclusion and Order

Based on the foregoing, it is

ORDERED that Plaintiff Crystal Power Company's Motion for Remand (Document No. 9) is GRANTED and this case is REMANDED to the 23rd District Court of Brazoria County, Texas.

The Clerk shall mail a certified copy of this Order to the Clerk of the 23rd Judicial District Court of Brazoria County, Texas, as required by 28 U.S.C. § 1447, and shall notify all parties and provide them with a signed copy of this Order.

SIGNED at Houston, Texas, this 18th day of August, 2004.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE