IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RUSSIAN ENERGY ADVISORS L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:07-cv-01043 |
| ATLAS PETROLEUM INTERNATIONAL | § | |
| LIMITED, ORANTO PETROLEUM | § | |
| LIMITED, and ARTHUR EZE, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR *FORUM NON CONVENIENS***

Reagan M. Brown
State Bar No. 03162200
Federal I.D. No. 4644
Joseph M. Graham, Jr.
State Bar No. 24044814
Federal I.D. No. 634151
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

Attorneys-in-Charge for Defendants Atlas
Petroleum International Limited, Oranto
Petroleum Limited, and Arthur Eze

OF COUNSEL:

FULBRIGHT & JAWORSKI L.L.P.
Tonja De Sloover
Daria Russell
John Sheppard
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  (713) 561-5151
Telecopy:  (713) 651-5246

Dated:  March 30, 2007

31302541.3

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF MATERIAL FACTS ............................................................ 2

III.    SUMMARY OF ARGUMENT ........................................................................... 4

IV.     ARGUMENT AND AUTHORITIES ................................................................. 5

    A.      This Motion is Timely ........................................................................... 5

    B.      Summary of The Three Prong Standard for Forum Non Conveniens
        Dismissal ................................................................................................. 5

    C.      An Adequate, Alternate Forum is Available in the High Court in London,
        England .................................................................................................... 6

    D.      The Gulf Oil Private Interest Factors Favor Dismissal .......................... 7

        1.      The Key Sources of Proof Are Located Outside Texas, and Largely
            in London ...................................................................................... 8

        2.      The Non-Party Witnesses Are Not Subject to Compulsory Process
            in Texas, Whereas Several Are in London, and the Cost for
            Willing Witnesses to Attend Will Be Much Less if the Trial is in
            London ....................................................................................... 10

        3.      The Fact That Part of This Lawsuit Could Be Compelled to
            Arbitration in London Also Weighs in Favor of Dismissal ................. 11

    E.      The Gulf Oil Public Interest Factors Also Favor Dismissal ................. 12

        1.      The Congestion of the Southern District of Texas Favors Dismissal
            Given This Lawsuit's Minimal Connection to Texas ........................... 12

        2.      London Has the Strongest Claim to This Lawsuit As Being a
            "Localized Controversy" That Should Be Tried "At Home" ................. 13

        3.      The High Court in London Should Preside Over This Case
            Because English Law Applies ............................................................ 14

V.      CONCLUSION ................................................................................................. 17

31302541.3

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Baris v. Sulpicio Lines*, 932 F.2d 1540 (5th Cir. 1991) ............................................................6, 12

*Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824 (5th Cir. 1993)............................................5

*Bellaire General Hospital v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822
    (5th Cir. 1996)........................................................................................................................11

*C&L Enterprises v. Citizen Band Potawatomi Indian Tribe of Oklahoma*,
    532 U.S. 411 (2001)............................................................................................................9, 10

*Cabiri v. Assasie-Gyimah*, 921 F. Supp. 1189 (S.D.N.Y. 1996) ...................................................7

*Gonzales v. P.T. Pelangi Niagra Mitra, International*, 196 F. Supp. 2d 482
    (S.D. Tex. 2002)........................................................................................................................7

*Gulf Oil Corp.*, 330 U.S. at 508-09..........................................................................................8, 12

*Gulf Oil v. Gilbert*, 330 U.S. 501 (1947) .......................................................................................6

*In re Adair*, 965 F.2d 777 (9th Cir. 1992)....................................................................................11

*In re Air Crash Disaster near New Orleans*, 821 F.2d 1147 (5th Cir. 1987).......................5, 6, 12

*In re Independent Energy Holdings PLC Security Litigation*, 2003 U.S. Dist. LEXIS
    17090 (S.D.NY Sept. 29, 2003)...........................................................................................16

*Morales v. Ford Motor Co.*, 313 F. Supp. 2d 672 (S.D. Tex. 2004) ............................................12

*Nolan v. Boeing Co.*, 919 F.2d 1058 (5th Cir. 1990)......................................................................7

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)......................................................................6, 7

*Sablic v. Armada Shipping Aps*, 973 F. Supp. 745 (S.D. Tex. 1997) .............................................7

*Syndicate 420 at Lloyd's London v. Early American Insurance Co.*, 796 F.2d 821
    (5th Cir. 1986)..............................................................................................................6, 7, 14

*Tjontveit v. Den Norske Bank ASA*, 997 F. Supp. 799 (S.D. Tex. 1998)................................12, 14

*Torreblanca de Aguilar v. Boeing Co.*, 806 F. Supp. 139 (E.D. Tex. 1992) ................................10

31302541.3

**STATE CASES**

*Citizens National Bank v. Allen Rae Investments, Inc.*, 142 S.W.3d 459
(Tex. App.—Fort Worth 2004, no pet.) ................................................................16

*Direct Color Services, Inc. v. Eastman Kodak Co.*, 929 S.W.2d 558
(Tex. App.—Tyler 1996, writ denied) ....................................................................5

*Moore v. Dallas Post Card Co.*, 215 S.W.2d 398 (Tex. Civ. App.—Dallas 1948, writ
refused, n.r.e.) ......................................................................................................15

*Tex. Technical Institute, Inc. v. Silicon Valley, Inc.*, 2006 WL 237027 (S.D. Tex. Jan. 31,
2006) ...................................................................................................................15

**Federal Rules**

FED. R. CIV. P. 4310-11 ................................................................................... 10-11

**Texas Statutes**

TEX. CIV. PRAC. & REM. CODE § 41.003(a)(1) .........................................................16

**Law Review Articles**

Norman Braslow, *The Recognition and Enforcement of Common Law Punitive Damages
in a Civil Law System: Some Reflections on the Japanese Experience*, 16 Ariz. J. Int'l &
Comp. Law 285 (1999) ...........................................................................................16

Alan Rau and Edward Sherman, *Tradition and Innovation in International Arbitration
Procedure*, 30 Tex. Int'l L. J. 89 (1995) ...................................................................16

John F. Vargo, *The American Rule on Attorney Fee Allocation:  The Injured Person's
Access to Justice*, 42 Am. U. L. Rev. 1567 (1993) ......................................................16

**English Case Law**

*Hellenic Steel Co. and Others v. Svolamar Shipping Co. Ltd. and Others*, (The
"Komninos S") [1991] 1 Lloyd's Rep. 370 ................................................................14

*Hornal v. Neuberger Products Ltd.* [1957] 1 QB 247 ................................................15

*Kelner v Baxter*, (1866) L.R. 2 C.P 174....................................................................15

*Rookes v Barnard*, House of Lords, [1964] AC 1129.................................................16

**English Primers**

Chitty on Contracts, 29th Ed, 9-013 ............................................................15

Dicey & Morris on Conflicts of Law, Fourteenth Edition, 32-064, 32-080 ..................................14

**Other Authorities**

Judicial Conference Subcommittee on Judicial Statistics, Federal Court Management
Statistics-1998, available at www.uscourts.gov/cgi-bin/cmsd2002.pl ........................................13

Judicial Conference Subcommittee on Judicial Statistics, Federal Court Management
Statistics-2006, available at www.uscourts.gov/cgi-bin/cmsd2006.pl ........................................13

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RUSSIAN ENERGY ADVISORS L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:07-cv-01043 |
| ATLAS PETROLEUM INTERNATIONAL | § | |
| LIMITED, ORANTO PETROLEUM | § | |
| LIMITED, and ARTHUR EZE, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR *FORUM NON CONVENIENS***

Defendants, Atlas Petroleum International Limited ("Atlas"), Oranto Petroleum Limited ("Oranto"), and Arthur Eze ("Eze") (collectively, the "Defendants") respectfully submit this memorandum in support of their Motion to Dismiss Plaintiff Russian Energy Advisors, L.L.C.'s ("REA") Second Amended Petition for *forum non conveniens*.

**I.      INTRODUCTION**

This litigation involves breach of contract and fraud claims brought by REA against Oranto, Atlas and Eze.  Previously, this case was removed to this Court on diversity grounds on December 12, 2006, and remanded back to state court on March 1, 2007.  Now, this case has been removed to this Court pursuant to 9 U.S.C. § 205.  Defendants have accordingly filed a Motion to Compel Arbitration to compel REA to arbitrate its dispute with Defendants as required by an agreement providing for arbitration in London, England, under the Rules of the International Chamber of Commerce.  Defendants file the present Motion to Dismiss subject to their Motion to Compel Arbitration, and move that any part of this lawsuit not compelled to

arbitration should be dismissed for *forum non conveniens* in favor of having this suit brought in the High Court in London, England.

## II.     STATEMENT OF MATERIAL FACTS

This litigation arises out of the Defendants' alleged failure to pay a success fee to REA pursuant to a Consulting Agreement made between REA, Oranto and Atlas on June 26, 2005. Second Amended Petition at ¶¶ 11-26, 31, 38.[1]   According to REA, the Consulting Agreement provided that REA would market Atlas' and Oranto's West African oil and gas licenses to Lukoil, a Russian company.   Petition at ¶¶ 16-18.   In exchange, REA would receive ten percent of any "signing bonus" paid to Atlas or Oranto by Lukoil should they enter into an agreement with Lukoil.   *Id.*

Negotiations regarding the Consulting Agreement were initiated in London between Defendant Arthur Eze and Michele Miller in the summer of 2005.[2]   Ex. A (Declaration of Dewill "Douglas" Dawn, III).   Eze is chairman of both Atlas and Oranto, and Miller is the President of REA.   Ex. B (Declaration of Arthur Eze); Petition at ¶ 1.   At that meeting, Miller suggested an agreement between REA and Oranto and Atlas to market their oil licenses to Lukoil.   Ex. A.   The meeting was brief and no agreement was made at that time.   *Id.*   Subsequently, Miller made a number of phone calls to Eze in Nigeria, and later wrote the Consulting Agreement and faxed it to Eze in Nigeria for execution by Oranto and Atlas.   Ex. B.   On July 26, 2005, the Consulting Agreement was executed in Nigeria on behalf of Atlas and Oranto.   *Id.*, Ex. C (Consulting Agreement).

Around November 2005, Oranto and Lukoil began active negotiations regarding an oil license held by Oranto in the Ivory Coast.   Ex. D (Declaration of Alan Jessop).   For Oranto, the

---

[1] The Petition is on file with the Court as an attachment to Defendants' Notice of Removal.

[2] Mr. Eze and Ms. Miller had met previously on one occasion at a social dinner in Houston, Texas.   They were introduced by Douglas Dawn, both an employee of Mr. Eze and a business acquaintance of Ms. Miller.   Ex. A.

negotiations were headed by Eze and a team of outside consultants from London, including Alan Jessop and Suhail Al-Salman.  *Id.*  For Lukoil, the negotiations were led by a team in London, including Mark Ralph, Alexander Timoshenko and Zhenya Vitebskaya, and other Lukoil representatives based in Russia.  *Id.*  The face-to-face negotiations between Oranto and Lukoil were held by the parties in London, and no negotiations occurred in Texas.  *Id.*

Ultimately, on July 11, 2006, Oranto and Lukoil entered into an agreement known as the "Farm-Out Agreement."  Ex. E (filed under seal).  According to REA, the making of the Farm-Out Agreement entitles it to a "signing bonus" under the Consulting Agreement.  Petition at ¶¶ 21-25.  REA has sued Defendants for breach of contract for failing to pay the signing bonus.  Petition at ¶ 31.  REA also claims Defendants breached the Consulting Agreement by failing to keep it apprised of negotiations with Lukoil, entering into the Farm-Out Agreement without REA's prior written consent, and failing to direct Lukoil to pay the signing bonus to REA directly.  *Id.*  Based on essentially identical facts, REA contends the Defendants have committed a fraud against it.  *Id.* at ¶¶ 34-38.

Defendant Eze is a citizen and resident of Nigeria who, with some frequency, attends to business matters for Oranto and Atlas in London.  Ex. B.  Defendants Atlas and Oranto are Nigerian corporations with offices in London and Nigeria.  Ex. F (Declaration of Stephen Snow).  Atlas and Oranto do not have offices in Texas, and nor does either have personnel or records in Texas that are relevant to these proceedings.  *Id.*

The Farm-Out Agreement provides that it is to be "governed and interpreted in accordance with the laws of England excluding any choice of law rules that would direct the application of the laws of another jurisdiction."  Ex. E at § 10.1.  Similarly, the Consulting Agreement provides that it is governed by the laws of the United Kingdom.  Ex. C at 2.  The

Consulting Agreement was drafted solely by Miller, a Texas lawyer.  *See* Ex. B.  The choice of United Kingdom law was hers.

## III.    SUMMARY OF ARGUMENT

This lawsuit should be dismissed because each of the three prongs of the Fifth Circuit's standard for determining motions to dismiss on *forum non conveniens* grounds overwhelmingly favors having this action brought in London.  The first prong, which requires the existence of an adequate alternative forum, is met because a forum is deemed adequate unless it essentially provides no remedy at all.  REA will not be deprived of "all remedy" in England.  As consistently held by the Fifth Circuit, England is an adequate alternative forum for this dispute.

The second *forum non conveniens* prong considers the "private interests" of convenience and cost to the parties, which also favors bringing this action in London.  Indeed, this action will be less expensive, burdensome, and inconvenient if brought in London because the critical events, witnesses, and documents occurred, reside, or are located in London (or much closer to London than Texas).  Except for REA's manager, the persons who entered into, negotiated, or facilitated the two agreements at issue in this lawsuit reside in London, maintain a business presence in London, and/or often travel to London – and conversely have no such ties to Houston.  None of the non-party witnesses (which include Lukoil representatives as well as non-party consultants for Defendants) are subject to compulsory process in Texas, whereas some are subject to compulsory process in England.  Thus, critical testimony may be lost unless this case is brought in London.  Because at least part of this lawsuit may be compelled to arbitration in London, keeping any remainder of the case in Texas would increase exponentially the expenses of this proceeding, including the amount of travel necessary for key witnesses to attend both proceedings.  For these reasons, the "private interests" of *forum non conveniens* analysis favor bringing this suit in the High Court in London.

The third prong of *forum non conveniens* analysis considers the "public interests" of the Court's resources and expertise, and also favors dismissal of this suit. Texas has little interest in this controversy, as evidenced by the fundamental focus of both agreements at issue: the development of a Nigerian company's oil assets in Western Africa through a contract with a Russian oil company. Moreover, the agreements call for the application of English or United Kingdom law. Therefore, dismissing this case and requiring REA to bring suit in London (or participate in arbitration proceedings in London) reduces the difficulties a Texas court may encounter in applying unfamiliar law.

## IV.    ARGUMENT AND AUTHORITIES

### A.    This Motion is Timely

A *forum non conveniens* motion is timely when brought within a reasonable time after the facts or circumstances which serve the basis for the motion have developed and become known to the defendant. *In re Air Crash Disaster near New Orleans*, 821 F.2d 1147, 1165 (5th Cir. 1987). This Motion is timely because it is being presented at an early point in the litigation. Indeed, this case was remanded to state court less than one month ago, has just been removed to federal court, and no discovery has taken place. *See Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 837 (5th Cir. 1993) (finding a *forum non conveniens* motion filed 130 days after denial of remand was timely); *see also Direct Color Services, Inc. v. Eastman Kodak Co.*, 929 S.W.2d 558, 567 (Tex. App.—Tyler 1996, writ denied) (holding that a *forum non conveniens* issue may be raised anytime before trial under Texas law).

### B.    Summary of The Three Prong Standard for *Forum Non Conveniens* Dismissal

The ultimate inquiry in deciding whether to grant a *forum non conveniens* dismissal is determining whether a trial in the forum selected by the plaintiff will best serve the convenience

of the parties and the ends of justice.  *See In re Air Crash Disaster*, 821 F.2d at 1162.  In *Gulf Oil v. Gilbert,* 330 U.S. 501, 508-09 (1947), the United States Supreme Court established a multi-factor test to be used by federal courts in determining whether private and public interests favor the dismissal of a lawsuit for *forum non conveniens*.

The Fifth Circuit uses a three prong test to apply the *Gulf Oil* formulation.  *See In re Air Crash*, 821 F.2d at 1165.  First, the court looks to whether an adequate, alternate forum is available.  *Id.*  Second, it analyzes the case using private interest factors as set forth in *Gulf Oil*.  *See id.*; *Baris v. Sulpicio Lines*, 932 F.2d 1540, 1550 (5th Cir. 1991).  If the private interest factors clearly favor an alternate forum, no further analysis is required, and the court will dismiss the case in favor of the alternate forum.  *Id.*  If the private interest factors do not clearly favor one forum, the court will analyze the case using the *Gulf Oil* public interest factors to see if dismissal is warranted.  *See In re Air Crash*, 821 F.2d at 1165; *Baris*, 932 F.2d at 1551.

## C.    An Adequate, Alternate Forum is Available in the High Court in London, England

An alternate forum is considered available if the defendants are amenable to process in the other jurisdiction, or if the defendant voluntarily submits to its jurisdiction.  *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n.22 (1981) (amenable to process); *Syndicate 420 at Lloyd's London v. Early American Ins. Co.*, 796 F.2d 821, 830 (5th Cir. 1986) (voluntary submission).  London is an available alternate forum because the Defendants all have a business presence in London (and therefore would be amendable to process there), and because each hereby agrees to submit to jurisdiction there.

London also is an adequate forum.  Only in "rare circumstances . . . where the remedy offered by the other forum is clearly unsatisfactory" will the alternate forum be considered inadequate.  *Piper Aircraft,* 454 U.S. at 254 n.22.  "[T]he remedy provided by the foreign forum

qualifies as inadequate only when it amounts to 'no remedy at all.'" *Gonzales v. P.T. Pelangi Niagra Mitra, Int'l,* 196 F. Supp. 2d 482, 486 (S.D. Tex. 2002) (*citing Piper Aircraft*, 454 U.S. at 254). "[O]nly the most perilous obstacles to conducting litigation, evidenced by a complete absence of due process in the alternative forum, will render that forum inadequate." *Id.* at 486; *see*, *e.g.*, *Sablic v. Armada Shipping Aps*, 973 F. Supp. 745, 748 (S.D. Tex. 1997) (finding that extreme political and military instability in the war-torn region, coupled with a large backlog of cases, rendered Croatian courts inadequate); *see also Cabiri v. Assasie-Gyimah*, 921 F. Supp. 1189, 1199 (S.D.N.Y. 1996) (denying dismissal where Ghanian plaintiff, who had political asylum status, had well-founded fear of prosecution if he brought action alleging torture by Ghanian officials in Ghanian courts).

There is no evidence that REA would face the "most perilous obstacles" in London that must exist to deem that forum inadequate. On the contrary, the Fifth Circuit has consistently held that English courts provide an adequate forum. *See, e.g., Nolan v. Boeing Co.*, 919 F.2d 1058, 1068-69 (5th Cir. 1990) (affirming dismissal of lawsuit filed in Louisiana in favor of trial in England, which was held to be an adequate alternate forum for resolution of the dispute); *Syndicate 420 at Lloyd's London*, 796 F.2d at 829 (differences in substantive law between Louisiana and England insufficient to render England inadequate as an alternate forum). Plainly, London, England is an adequate, alternate forum for this case.

### D.    The *Gulf Oil* Private Interest Factors Favor Dismissal

Since there is an adequate, alternate forum in London, the next issue is whether "private interest" factors favor trial in the alternate forum. The private interest factors to be considered are: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses; (3) possibility of view of premises, if view would be appropriate to the action; and (4) all other

practical problems that make trial of a case easy, expeditious and inexpensive.  *Gulf Oil Corp.,* 330 U.S. at 508-09.

        1.     The Key Sources of Proof Are Located Outside Texas, and Largely in London

The key sources of proof (*i.e.*, documents and witnesses) are determined by the critical issues in the case.  The central issue in this case is whether REA is due compensation under the Consulting Agreement.  REA's fee in the Consulting Agreement is described as ten percent of any "signing bonus" that is received by Oranto or Atlas from Lukoil through the Farm-Out Agreement.  Ex. C.  Therefore, two critical questions in this litigation involve the validity and scope of the Consulting Agreement as it relates to the Farm-Out Agreement, and the interpretation of the Farm-Out Agreement.  The resolution of these issue will depend upon fact intensive discovery concerning the two agreements, and the personal knowledge of the individuals who participated in forming them.

The location of the witnesses favors bringing this action in London.  Nearly every witness with relevant information regarding the two agreements has a connection to London, while just one is from Texas.  Those witnesses include:  (1) Defendant Arthur Eze, who resides in Nigeria and travels to London to attend to Oranto business at its London office; (2) the Group Managing Director of Oranto, Stephen Snow, who conducts Oranto business activities in London and resides in Nigeria; (3) Douglas Dawn, who was present at Mr. Eze's and Ms. Miller's meeting in London and who resides primarily in Nigeria; (4) the Lukoil representatives, who reside in Russia and conduct business there and in London; and (5) Oranto's consultants, Alan Jessop and Suhail Al-Salman, who were active participants in the negotiations with Lukoil and who reside and work in London.  *See* Exs. A, B, D and F.

The only prospective material witness located in Texas is Miller.  Her weight as a witness may be diminished by the common-law rule of contract interpretation that construes ambiguous language against the party who drafted it.  *C&L Enters. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 423 (2001).  As discussed above, under the Consulting Agreement, REA seeks a percentage of the "signing bonus" given to Oranto by Lukoil.  The term "signing bonus," however, is absent from the Farm-Out Agreement.[3]  To the extent there is an ambiguity as to what "signing bonus" means with respect to the Farm-Out Agreement, this ambiguity should be resolved against REA, as Miller – a lawyer – wrote the Consulting Agreement.  Ex. B. In construing the agreement against REA, the testimony of the foreign witnesses would gain added relevance, and the weight given to Miller's testimony would diminish.

The bulk of the relevant documents in this case are likewise in London, or at least much closer to London than Texas.  The documents pertaining to the Farm-Out Agreement, as well as documents relating to the oil block that is the subject of the Farm-Out Agreement, are in London, Russia or Nigeria; and, those in Nigeria can easily be transferred from Oranto's office in Nigeria to its office in London.  Exs. D. F.  Oranto and Atlas have no place of business in Texas, and thus maintain no documents there regarding the Farm-Out Agreement.  Ex. F.  REA is the only party with a connection to Texas, and did not participate in the Farm-Out Agreement (other than to now claim benefits from it).  Thus, no documents relevant to the Farm-Out Agreement are in Texas.

There also are no documents in the possession of Defendants in Texas regarding the Consulting Agreement.  *See* Ex. F.  It is likely REA possesses only a minimal number of relevant documents in Texas.  Indeed, all face-to-face negotiations regarding the Consulting Agreement

---

[3] Notably, section 3.6(b) of the Farm-Out Agreement does reference a "signature bonus" payment by Lukoil to Oranto.  At most, the "signing bonus" referenced in the Consulting Agreement should be limited to the amount of the "signature bonus" under the Farm-Out Agreement.

occurred in London.  Ex. B.  The agreement was executed when Miller sent it to Eze in Nigeria for his signature, with hers already affixed.  *Id.*  While REA claims to have performed under the Consulting Agreement in Texas, this makes little sense as the purported targets of REA's marketing efforts – the Lukoil representatives – were located in London and Russia.  *See* Ex. D.  Although Miller is a resident of Texas, REA's other two principals are reportedly a Russian citizen, Alexander Bajenov, and a Pennsylvania citizen, Andrew Morozov.  Petition at ¶ 1.  There are no facts to suggest that either Bajenov or Morozov created any documentary evidence in Texas.

Based on the foregoing, the first *Gulf Oil* private interest factor, which considers the location of the sources of proof, favors bringing this suit in London.

> 2. <u>The Non-Party Witnesses Are Not Subject to Compulsory Process in Texas, Whereas Several Are in London, and the Cost for Willing Witnesses to Attend Will Be Much Less if the Trial is in London</u>

The second *Gulf Oil* private interest factor – the availability of compulsory process for unwilling witnesses and the expense of procuring attendance of willing witnesses – favors trial in London, England.  Alan Jessop and Suhail Al-Salman, outside consultants of Atlas and Oranto, played a material role in the London negotiations.  Ex. D.  Because both reside in London, they are not be subject to subpoena in Texas, and their testimony cannot be compelled unless this action is brought in London.  *See id.*  The Lukoil representatives who reside in Russia and in London are also beyond the reach of this Court.  Where third-party witnesses are outside the United States, and therefore outside the court's subpoena power, this factor favors dismissal.  *Torreblanca de Aguilar v. Boeing Co.*, 806 F. Supp. 139, 144 (E.D. Tex. 1992).

Even if the non-parties' testimony could be compelled by letters rogatory served under the Hague Convention on the Taking of Evidence Abroad, those procedures are expensive, difficult, time consuming, and uncertain.  What is more, such evidence is no real substitute for

in-court, live testimony by the witnesses. *See* Fed. R. Civ. P. 43; *Bellaire General Hosp. v. Blue Cross Blue Shield of Michigan,* 97 F.3d 822, 827 n.5 (5th Cir. 1996) (citing *In re Adair,* 965 F.2d 777, 780 (9th Cir. 1992) ("The primary purposes of [FRCP] 43(a) are to ensure that the accuracy of witness statements may be tested by cross-examination and to allow the trier of fact to observe the appearance and demeanor of witnesses.")).

In the unlikely event that the key witnesses were to voluntarily agree to participate in the Texas action, the cost for them to do so favors bringing the suit in London. It would be far less burdensome and less expensive for Messrs. Jessop and Al-Salman to testify in their hometown of London than in Texas. Should the Lukoil representatives who are located in Russia voluntarily agree to testify, the expense and inconvenience of traveling to attend trial in Texas is assuredly much greater than travel to London. As to the witnesses in Africa, they too would be much less inconvenienced by travel to London than to Texas.[4]

> 3.    The Fact That Part of This Lawsuit Could Be Compelled to Arbitration in London Also Weighs in Favor of Dismissal

The fourth *Gulf Oil* private factor[5] allows the Court to consider other practical problems that make trial of a case easy, expeditious and inexpensive. Defendants have moved to compel arbitration of this dispute in London. Even if the Court were to allow a portion of the dispute to be adjudicated outside the arbitration process, it would be appropriate to adjudicate that part in London as well. Otherwise, the parties would be subject to the substantial inconvenience of participating in related proceedings on two continents thousands of miles away. All opportunity to harmonize and integrate resources and time would be lost.

---

[4] Travel from Lagos to London is readily available on eight airlines and travel time is approximately seven hours. Conversely there is no direct service between Lagos and Houston, requiring travelers to change planes in a European city, such as London, before flying to Texas. Travel time is in excess of nineteen hours. *See* Ex. F.
[5] The third *Gulf Oil* factor, view of the premises, does not apply to this case.

In sum, the *Gulf Oil* private factors clearly favor trial in the High Court in London, England.  Therefore, the Court may dismiss the case without analyzing the public interest factors.  *In re Air Crash*, 821 F.2d at 1165; *Baris v. Sulpicio Lines*, 932 F.2d 1540, 1550 (5th Cir. 1991).

### E.      The *Gulf Oil* Public Interest Factors Also Favor Dismissal

The *Gulf Oil* public interest factors, to the extent applicable, also favor dismissal of this lawsuit for *forum non conveniens*.  The *Gulf Oil* public interest factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized controversies decided at home; 3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; 4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and 5) the unfairness of burdening citizens in an unrelated forum with jury duty.  *Gulf Oil Corp.,* 330 U.S. at 509.

1. The Congestion of the Southern District of Texas Favors Dismissal Given This Lawsuit's Minimal Connection to Texas

The first *Gulf Oil* public interest factor regarding court congestion favors dismissal. Courts have analyzed this factor from the perspective of the presiding court system.  *See Tjontveit v. Den Norske Bank ASA,* 997 F. Supp. 799, 812-13 (S.D. Tex. 1998); *Morales v. Ford Motor Co.,* 313 F. Supp. 2d 672, 685, 689 (S.D. Tex. 2004).  In *Tjontveit*, the Court found:

> The courts of [the Southern District of Texas] are congested with cases having far greater ties to Texas and to the United States than this dispute. At present, the Southern District of Texas has several judicial vacancies, and each sitting judge has a heavy caseload. The demands of a sizable criminal and prisoner docket and the priority given to criminal cases leads to an inevitable backlog of civil cases. Therefore, the conservation of judicial resources is an important objective, as it enhances the efficient and just resolution of the numerous cases in which this is the only appropriate forum. This objective is better served by this court's dismissal of the instant case.

*Tjontveit*, 997 F. Supp. at 812-13.

When *Tjontveit* was decided in March 1998, the average total filings per judge in the Southern District of Texas was 517.[6]  The judges of the Southern District of Texas have an even heavier caseload today.  In the twelve month period ending September 30, 2006, there were 709 filings per sitting judge in the Southern District of Texas.[7]

As was the case in *Tjontveit*, this case has only a minimal connection to Texas, and London is an adequate alternative forum.  The public interest is served by conservation of this Court's judicial resources for the resolution of cases for which the Southern District of Texas is the only appropriate forum.

        2.      <u>London Has the Strongest Claim to This Lawsuit As Being a "Localized Controversy" That Should Be Tried "At Home"</u>

The second *Gulf Oil* public factor, an interest in trying "localized controversies" at home, favors London as a forum over any other jurisdiction.  The only face-to-face negotiations regarding the Consulting Agreement were in London.  Exs. A, B.  The Farm-Out Agreement that is the foundation of REA's lawsuit was negotiated in London.  Ex. D.  These agreements provide for the application of United Kingdom and English law, respectively.  Ex. C at 2; Ex. E at § 10.1. If any jurisdiction can stake a claim to this being a "localized controversy," it is England.

To be clear, Texas' interest in this action is minimal when one considers the full scope of the dispute.  The Consulting Agreement obligated REA to develop interest by Lukoil's personnel, who were located in London and Russia, in Oranto's and Atlas' West African oil and gas licenses. Ex. C.  The triggering event giving rise to REA's claims was the making of the Farm-Out Agreement, negotiated in London by Nigerian and Russian companies for investment

---

[6] *See* Judicial Conference Subcommittee on Judicial Statistics, Federal Court Management Statistics-1998, available at www.uscourts.gov/cgi-bin/cmsd2002.pl (filing statistics for the U.S. District Court for the Southern District of Texas during twelve month period ending September 30, 1998).

[7] *See* Judicial Conference Subcommittee on Judicial Statistics, Federal Court Management Statistics-2006, available at www.uscourts.gov/cgi-bin/cmsd2006.pl (filing statistics for the U.S. District Court for the Southern District of Texas during twelve month period ending September 30, 2006).

in an oil field located in Atlantic waters off the Ivory Coast.  The facts here bear only a tangential relationship to Texas and do not present a "substantial interest" by Texas in deciding this case in its courts.  *See Syndicate 420 at Lloyd's London,* 796 F.2d at 832 (although underlying risk was located in Louisiana, the state had no "substantial interest" in controversy between British insurer and an Alabama and Delaware corporation).  Indeed, even Miller, REA's manager (who is also an attorney) recognized Texas' minimal interest when she provided that "United Kingdom law" would govern the Consulting Agreement.  Ex. C at 2.

        3.        <u>The High Court in London Should Preside Over This Case Because English Law Applies</u>

The third and fourth *Gulf Oil* public factors favor trial in London because the Consulting Agreement's choice of law provision designates the law of the United Kingdom as the governing law for "all respects" of the contract.  Ex. C at 2; *see Tjontveit*, 997 F. Supp. at 810 (fact that foreign law is applicable to an action considered by the Court to be a "pivotal" factor in declining jurisdiction).  The provision of "United Kingdom" law in the Consulting Agreement likely will result in the application of English law.[8]  The other critical document – the Farm-Out Agreement – similarly selects English law as the law to "govern" the agreement.  Ex. E at § 10.1.

REA's fraud claim is inextricably intertwined with the Consulting Agreement, alleging that misrepresentations were made in the contract itself and in negotiations leading up to the contract execution.  Petition at ¶ 35.  This fact supports the application of English law to <u>all</u> of REA's claims.  Indeed, as attorney Miller wrote in the choice of laws clause, "[t]his Agreement

---

[8] When a choice of law provision ambiguously refers to "British" law or "United Kingdom" law, English courts will apply the law of the particular jurisdiction intended by the parties.  *See* Dicey & Morris on Conflicts of Law, Fourteenth Edition, 32-064, 32-080.  Here, the Consulting Agreement was negotiated partially by Ms. Miller and Mr. Eze in London, and there is no connection with any other jurisdiction within the United Kingdom.  These facts should be sufficient to find an intent to apply English law.  *See generally Hellenic Steel Co. and Others v. Svolamar Shipping Co. Ltd. and Others*, (The "Komninos S") [1991] 1 Lloyd's Rep. 370 (applying English law in commercial contract case containing reference to "British Courts").

shall in *all respects* be governed by and construed in accordance with the laws of the United Kingdom." Ex. C at 2 (emphasis added).

Bringing this action in London will avoid problems in the application of foreign law, particularly since English law and Texas law are in conflict regarding several key issues to this dispute. For example, REA was not yet in existence when it purportedly entered into the Consulting Agreement on July 26, 2005.[9] There is Texas case law authority to support the proposition that an entity can sue for breach of a contract entered in its name, even if the entity did not come into existence until after the contract was signed. *See, e.g., Tex. Technical Institute, Inc. v. Silicon Valley, Inc.*, 2006 WL 237027, at *2 n.8 (S.D. Tex. Jan. 31, 2006);[10] *Moore v. Dallas Post Card Co.*, 215 S.W.2d 398, 404 (Tex. Civ. App.—Dallas 1948, writ refused, n.r.e.)). But English law prohibits this from occurring. *See* Chitty on Contracts, 29th Ed, 9-013. Instead, for a pre-incorporation contract to become valid, the company must enter into a new contract, and cannot simply unilaterally ratify the previous "contract" after its incorporation. *Kelner v. Baxter*, (1866) L.R. 2 C.P. 174.

Another key conflict between Texas and English law is the burden of proof required in a fraud claim. In England, the burden of proof in a fraud claim is fluid and increases as the seriousness of the allegation increases. *See Hornal v. Neuberger Products Ltd.* [1957] 1 QB 247 at 258 per Denning L.J. Indeed, "[t]he more serious the allegation the higher the degree of probability that is required[.]"). *Id.* This is a concept that is foreign to Texas courts.

There also is a difference in what REA can recover as damages under English law as compared to Texas law. REA seeks to recover exemplary damages. Petition at ¶ 39. In Texas,

---

[9] A true and correct copy of REA's Articles of Incorporation, obtained from the Texas Secretary of State, is attached hereto as Ex. G. The Articles indicate they were filed on August 2, 2005.

[10] Defendants have attached hereto as Ex. H copies of all unpublished U.S. cases, English law and the English treatise cited herein.

exemplary damages are recoverable when the claimant proves by clear and convincing evidence that it was harmed as a result of fraud.  TEX. CIV. PRAC. & REM. CODE § 41.003(a)(1); *Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 484 (Tex. App.—Fort Worth 2004, no pet.).  Under English law, there is no similar general provision for exemplary damages in fraud cases, and the availability of exemplary damages is rarely permissible.  *See generally Rookes v. Barnard*, House of Lords, [1964] AC 1129 (stating "the idea of exemplary damages is peculiar to English law" while acknowledging limited circumstances where they are appropriate); Norman Braslow, *The Recognition and Enforcement of Common Law Punitive Damages in a Civil Law System: Some Reflections on the Japanese Experience*, 16 Ariz. J. Int'l & Comp. Law 285, 344-50 (1999) ("England has severely restricted the factual basis upon which [punitive damages] may be imposed.") ("English common law has expressly rejected the provisions that in the U.S. are the essential foundations for punitive damages.").

Finally, it is noteworthy that under English procedure, discovery depositions are not permitted as they are in Texas.  *See* John F. Vargo, *The American Rule on Attorney Fee Allocation:  The Injured Person's Access to Justice*, 42 Am. U. L. Rev. 1567, 1602 (1993) ("Pretrial discovery by depositions, interrogatories, and production of documents, all familiar practices to U.S. practitioners, are unknown in England."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 U.S. Dist. LEXIS 17090, at *6 (S.D.NY Sept. 29, 2003) ("English law also prohibits the taking of discovery depositions.").  Discovery depositions are also not provided for under the Arbitration Rules of the International Chambers of Commerce, which will govern the arbitration proceeding.  *See* Alan Rau and Edward Sherman, *Tradition and Innovation in International Arbitration Procedure*, 30 Tex. Int'l L. J. 89, 103 (1995) ("Depositions of witnesses are foreign to international arbitration, at least as a means of discovery before trial.").

Thus, if part of this lawsuit is compelled to arbitration under the I.C.C. rules, litigating the rest of the case to the High Court in London will better harmonize the procedures followed in the two forums.

## V.     CONCLUSION

For the foregoing reasons, Defendants Atlas Petroleum International Limited, Oranto Petroleum Limited, and Arthur Eze respectfully request that this Court grant Defendants' Motion to Dismiss for *Forum Non Conveniens* in favor of proceedings in the High Court in London, England, and for such other and further relief to which they are entitled.

Respectfully submitted,

s/Reagan M. Brown

Reagan M. Brown
State Bar No. 03162200
Federal I.D. No. 4644
Joseph M. Graham, Jr.
State Bar No. 24044814
Federal I.D. No. 634151
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

Attorneys-in-Charge for Defendants Atlas Petroleum International Limited, Oranto Petroleum Limited, and Arthur Eze

OF COUNSEL:

FULBRIGHT & JAWORSKI L.L.P.
Tonja De Sloover
Daria Russell
John Sheppard
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  (713) 561-5151
Telecopy:  (713) 651-5246

31302541.3                                        17

## <u>CERTIFICATE OF SERVICE</u>

This pleading was served in compliance with the Federal Rules of Civil Procedure by electronic service through the CM/ECF system and certified mail on March 30, 2007.


<u>s/Reagan M. Brown</u>
Reagan M. Brown